M.A.P. Coolidge v. Commissioner. M.E.P. Dwight v. Commissioner. Louise P. Ewing v. Commissioner. Charlotte P. Milmine v. Commissioner. Henry Parsons v. Commissioner. Joseph Parsons v. Commissioner.
Coolidge v. Commissioner
Docket Nos. 103648-103653, incl.
United States Tax Court
1942 Tax Ct. Memo LEXIS 1; 1 T.C.M. (CCH) 321; T.C.M. (RIA) 42680; 12/31/1942
*1 R. C. Allen, Esq., 40 E. 42nd St., New York City, and William Cogger, Esq., for the petitioners. Henry C. Clark, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1937 as follows: Docket
No.
Petitioner
Deficiency
103648
M.A.P. Coolidge
$1,013.71
103649
M.E.P. Dwight
1,300.41
103650
Louise P. Ewing
1,432.14
103651
Charlotte P. Milmine
2,662.80
103652
Henry Parsons
8,529.59
103653
Joseph Parsons
3,525.29
The principal question in issue is whether the petitioners, who are all brothers and sisters, are entitled to deductions in their individual income tax returns of proportionate parts of the capital losses resulting from security transactions conducted by George Parsons' Sons, an alleged partnership, in the management of their undivided interests in the estate of their deceased father, George Parsons. The respondent has determined that the interests of the petitioners in the assets of the estate were managed as a single unit in the form of a statutory partnership and that the individual petitioners are each taxable on their distributive *2 portions of the partnership's net income computed with due allowance for the partnership's capital losses. A secondary issue in Docket No. 103651 is whether the petitioner, Charlotte P. Milmine, is entitled to a deduction of custodian fees in the amount of $1,917.65. [The Facts] The petitioners are the sons and daughters of George Parsons who died testate on December 4, 1907. They all reside at Kennebunk, Maine, except Charlotte P. Milmine, who resides at Lakeville, Connecticut, and M.A.P. Coolidge, who resides at Boston, Massachusetts. The record does not show the collection districts in which their returns were filed. In his will George Parsons made certain specific bequests including bequests of $100,000 each to his wife and his seven children and left the remainder of his estate in trust to his three sons, Henry Parsons, Joseph Parsons, and William Usher Parsons, and his daughter, Mary Abigail Parsons, who were also named as executors of his will, to receive and collect the income therefrom and to distribute the net income equally among the seven children after payment to his wife, Sarah Elizabeth Parsons, of such amount as might be required for her support and for maintenance *3 of the properties bequeathed to her. The trust estate was to continue until the death of the last survivor of the wife and children when the remaining assets were to be distributed to the issue or lineal descendants of the children per stirpes. It was further provided that the trust estate might be terminated at any time upon the written requests to the trustees of five or more of the children to their issue acting by representation. The will was approved and admitted to probate on January 7, 1908. On December 12, 1907, Henry Parsons, Joseph Parsons, and William Usher Parsons formed a partnership known as "George Parsons' Sons." A formal partnership agreement was executed which stated that the business of the partnership was to be buying and selling securities - * * * joining, organizing and conducting syndicates, financing of undertakings seeking credit, managing and acquiring properties, lending and borrowing money, discounting paper, conducting a general banking business and doing any other lawful business that the partners may consent to do. The capital of the partnership was to be $100,000 to be paid in by each of the three partners in approximately equal amounts. The *4 partners were authorized to receive salaries, later to be fixed, and were to share the liabilities and profits in proportion to their capital contributions. Apparently this partnership never functioned in the manner provided for in the partnership agreement of December 12, 1907. It is the testimony of Henry Parsons, petitioners' only witness in these proceedings, that no capital was ever paid in to the partnership by any of the partners; that the partnership never did any business on its own behalf; and that its only activity was managing the assets of George Parsons' estate as agent for the benefit of the heirs. This witness further testified that after the death of George Parsons he and the other executors carried out the directions of the will and that within about a year the estate was closed and the remainder of the assets of the estate turned over to George Parsons' Sons. The evidence of record does not show what form of conveyance, if any, was used in making the transfer or of what the assets consisted. He further testified that all of the assets of George Parsons' estate which came under the management of George Parsons' Sons were carried out in a single capital account; *5 that there was a profit and loss account in which were entered all of the transactions relating to those assets; that title to all of the securities purchased on the account was taken in the name of George Parsons' Sons; that separate individual accounts were carried for each of the heirs showing all of the contributions and withdrawals made by them; and that a bank account was opened by George Parsons' Sons in its own name in which all of the income from dealing in the common assets was deposited and from which all of the office expenses were paid. We do not have before us any evidence as to the specific amounts entered in any of these accounts. The testimony is that in 1930 the capital account amounted to about $1,000,000. It will be noted that the will of George Parsons provides that the executors should convey the residue of his estate to themselves as trustees and that the trust should continue until the death of the last survivor of his children or widow, unless earlier terminated by the trustees upon a request of at least five of the children. We do not know whether such a trust conveyance of the assets of the residuary estate was ever made or whether the trustees named in *6 the will ever functioned as such. Neither is it shown whether the assets taken over and managed by George Parsons' Sons consisted only of the residuary estate of George Parsons or of the entire interests of the seven children in the assets of the estate, including the $100,000 specific bequests which were made to each of them and to their mother. On April 28, 1911, petitioners' mother, Sarah Elizabeth Parsons, executed an instrument purporting to convey to "the firm of George Parsons' Sons" all of her "stocks, bonds, notes, evidences of indebtedness, moneys and real estate or interest therein of which I am possessed," with certain specified exceptions, in consideration for the promise of George Parsons' Sons to pay her $11,000 annually during her lifetime. On November 27, 1914, and November 28, 1914, respectively, two instruments were executed, one by Henry Parsons, Joseph Parsons, and William Usher Parsons "doing business under the firm name and style of GEORGE PARSONS' SONS," purporting to transfer to Sarah Elizabeth Parsons all of her property then held by them, and the other by Sarah Elizabeth Parsons purporting to convey such properties to her children "in common and undivided *7 (one-seventh each)." Sarah Elizabeth Parsons died in 1918. The evidence does not show what disposition was made of her estate. On January 1, 1915, an agreement was entered between the seven children of George Parsons and George Parsons' Sons wherein it was recited that George Parsons' Sons was to continue to act as agent for the children and was to continue to hold the property assigned to it by Sarah Elizabeth Parsons on November 28, 1914, and that the property conveyed "shall be held in common and undivided and managed and invested by the said George Parsons' Sons as the agents" of the children. This agreement also recited that the seven children "do severally constitute and appoint the said George Parsons' Sons their agents and attorneys in the premises." On October 7, 1924, a further agreement was entered into between George Parsons' Sons and the seven children of George Parsons declaring in substance that each one of the children was the owner of an undivided one-seventh interest in the total value of securities and other properties which George Parsons' Sons were holding for them, and that each of such children would accept from George Parsons' Sons in settlement of his interests *8 in such properties either cash or securities, or both, such as George Parsons' Sons might elect to deliver in settlement of the amounts due them. According to the original partnership agreement of December 12, 1907, the partnership of George Parsons' Sons was to continue for ten years. On November 30, 1917, it was extended for a further period of ten years, and by mutual consent of all parties was continued thereafter until February 1, 1930, at which time Theodore W. Dwight and George P. Milmine, sons of M. E. P. Dwight and Charlotte P. Milmine, respectively, were taken into the partnership. A new partnership agreement was executed at that time which was to continue for a period of 20 years. This agreement provided that the partnership was to have capital stock of $10,000 which was to be contributed equally by Henry Parsons, Joseph Parsons, and William Usher Parsons, and that the other two partners were to contribute their services as their respective contributions to the capital. The business of the new partnership was declared to be substantially the same as that of the old. However, a month later, on March 1, 1930, the new partnership agreement was amended, changing the business *9 of the partnership as follows: Article "Fourth" - The business of said copartnership shall be acquiring, managing and conserving individual and trust properties, and buying and selling municipal, railroad and public utility and other bonds and securities of every kind and description in connection therewith, and acting as financial agents and conservators generally, including loaning and borrowing money, discounting paper and doing any other similar business that the several partners may from time to time mutually and lawfully agree in writing to do. On February 1, 1932, an agreement was entered into by George Parsons' Sons and the seven children of George Parsons which recited that: WHEREAS, the firm of George Parsons' Sons manages for the parties of the second part in one joint account the securities and investments of the parties of the second part including stocks, bonds. notes, mortgages, open accounts and certificates of indebtedness, etc., each of the seven parties of the second part having a one-seventh interest in the said account, and WHEREAS, on the seventh day of October, 1924, the party of the first part and the parties of the second part entered into an agreement *10 (copy of which is hereto annexed) regarding the division of the property handled in a joint account by George Parsons' Sons for the use and convenience of the parties of the second part, and WHEREAS, it is desired to amplify said agreement as to the time during which its terms shall be carried out, and WHEREAS, because in the event of the death of any one or more of the above mentioned individuals, or her or his withdrawal from the account it would become necessary to liquidate the interest of the individual so dying or withdrawing within a limited period of time, and because of the nature of the investments in such account there might result loss as well as difficulty in liquidating the interest of the one so dying or withdrawing unless a sufficient length of time be provided for such liquidation; NOW, THEREFORE, in consideration of the premises and Five Dollars, IT IS HEREBY AGREED between the parties hereto that if, for any reason, the share of any one or more of the above named individuals in said account must be liquidated, George Parsons' Sons shall not be required to fully liquidate said share or shares in said account for a period of three years from the date on which notice *11 is given to said George Parsons' Sons requiring the liquidation of said share or shares in said account, and it is further agreed that George Parsons' Sons alone shall determine the time or times liquidation in said period of three years. It is hereby further agreed between the partles to this agreement that in case of dispute between any one of the parties of the second part and the party of the first part as to the value of any asset in said account, the same shall be referred to arbitration. In addition to managing petitioners' undivided interests in the assets of their father's estate, George Parsons' Sons acted as agent or custodian for two trusts which had been created by George Parsons during his lifetime, collecting the income of such trusts and paying it over to the trustees. It also rendered many services to the children of George Parsons which are not reflected in its profit and loss account. From time to time it invested moneys belonging to the several children, advanced moneys to different members of the family for short periods, and assisted in other matters of a financial or business nature. All of these transactions for the individual children were handled separately *12 from those relating to the joint account. George Parsons' Sons filed a fiduciary return, Form 1041, for 1937 showing a net income, mostly from dividends, of $18,863.71, and a capital loss from trading in securities of $104,724.20. The return showed each of the beneficiaries, the six petitioners herein, entitled to distributable income of $3,143.95 (one-sixth of the net income) and likewise showed each beneficiary's share of the net capital loss to be one-sixth of $104,724.20, or $17,454.04. The schedules attached to the return showed gross sales of securities in 1937 of more than $2,000,000, most of which had been held for less than a year. In computing the distributable income of $18,863.71 for 1937 the fiduciary did not claim the deduction of any net loss from the sale of securities. It claimed the deduction from gross income of $18,105.83 as commissions paid on the purchase and sale of securities which the respondent disallowed. The respondent, however, allowed the deduction from gross income of a capital loss of $2,000 on the sale of securities. The respondent determined that the correct distributable income of George Parsons' Sons for 1937 was $35,722.05. He therefore increased *13 the distributable net income reported by each of the petitioners by approximately $2,819.72. Some or all of the petitioners had capital gains or losses from the sale of securities in 1937 separate from the transactions conducted by George Parsons' Sons. They each claim the right to offset against such capital gains a portion of the capital losses sustained by George Parsons' Sons, or in any event to deduct an amount not exceeding $2,000 on account thereof. [Opinion] The respondent's contention is that the business of managing the interests of the petitioners in the assets of the estate of George Parsons was conducted as a statutory partnership, or, if not as a partnership, then as an association taxable as a corporation, and that only one capital net loss deduction as limited by section 117 (d) of the Revenue Act of 1936 is allowable in respect of the business. The petitioners contend that they were not members of any partnership and were not engaged in a joint venture at any time. They contend that their undivided interests in the assets of their father's estate were held and managed as a tenancy in common and that they are each entitled to deduct a proportionate part of *14 the capital loss shown on the fiduciary return filed by George Parsons' Sons with the limitation prescribed by the statute (section 117 (d) of the Revenue Act of 1936). Section 1001 (a) (3) of the Revenue Act of 1936 defines a partnership as follows: (3) The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term "partner" includes a member in such syndicate, group, pool, joint venture, or organization. The evidence before us is that a valid partnership composed of Henry Parsons, Joseph Parsons, and Williams Usher Parsons was created by the formal partnership agreement of December 12, 1907, and this partnership continued in existence until February 1, 1930, when a new successor partnership was created with a membership composed of the old members, Henry Parsons, Joseph Parsons, and William Usher Parsons, and Theodore W. Dwight and George P. Milmine. The new partnership has continued in existence up to the present time without change except that *15 one of the partners, William Usher Parsons, died in 1933 and his interest in the assets of George Parsons' estate was paid over to his estate. The other petitioners in these proceedings, M.A.P. Coolidge, M.E.P. Dwight, Louise P. Ewing, and Charlotte P. Milmine, were not taken into the membership of either of these partnerships and there is no evidence that any one of them ever intended to be, or was ever regarded as being, a member of either of such partnerships. The respondent's contention is that as between themselves these petitioners all mutually agreed that their undivided interests in the assets of their father's estate should be held and managed as a single business venture in the name of George Parsons' Sons and that this constituted a "joint venture" or statutory partnership within the meaning of section 1001 above. If there was such a joint venture, or statutory partnership, then the capital loss sustained in the operation of the venture is deductible in computing the net income thereof and is not allowable to the individual partners. E. G. Wadel, 44 B.T.A. 1042. A joint venture has been defined as "A special combination of two or more *16 persons, where, in some specific venture, a profit is jointly sought, without actual partnership or corporate designation." See Motter v. Smyth, 77 Fed (2d) 77, 79. The evidence before us does not give a very clear picture of just what took place in the settlement of George Parsons' estate. We do not know whether the assets of the residuary estate were ever transferred to the testamentary trustees, as the will directed, or not. Neither do we know whether the undivided interests of the petitioners which were held in the joint account in the name of George Parsons' Sons consisted of their interests in the residuary estate only, or of their specific bequests only, or both. If the provisions of the will were fully carried out, and Henry Parsons, one of the executors and testamentary trustees, testified that they were, then there must have been a distribution to each of the petitioners of their $100,000 bequest and a transfer of the residuary estate to the executors as trustees. Although there is reference in the evidence to two other trusts which are said to have been created by George Parsons during his lifetime and for which George Parsons' Sons acted *17 as agent or custodian, there is no reference whatever to the testamentary trust. Of course, if such a trust ever existed it constituted a tax entity in itself and any capital losses that it may have sustained were deductible in computing its distributable net income and were not deductible by the individual beneficiaries. Likewise, these trust assets, if such they were, could never have been distributed to the individual petitioners except upon termination of the trust as provided in the will, of which there is no evidence, and therefore could not have been contributed by them to any joint venture or partnership. On the other hand if the assets which were carried by George Parsons' Sons in the joint account for petitioners consisted of the specific bequests which were made to them in George Parsons' will, then it must be inferred that these bequests were actually or constructively paid over to them by the executors and then reassigned to George Parsons' Sons. And, if petitioners thus voluntarily contributed their undivided interest in the assets of the estate to a common fund with the understanding that they were to be managed jointly as an investment business, then we think that *18 the arrangement constituted a "joint venture" or statutory partnership. See E. G. Wadel, supra; Chase S. Osborn, 22 B.T.A. 935; Motter v. Smyth, supra. On the present state of the record we are unable to make any ruling other than to sustain the respondent's determination as to his disallowance of the capital loss deductions claimed by petitioners for lack of evidence showing that any error has been made. The remaining issue is this: In her income tax return Charlotte P. Milmine claimed the deduction from gross income of $1,917.65 as custodian fees. This deduction was disallowed by the respondent upon the ground that the petitioner had not shown that the item is an ordinary and necessary expense in carrying on a trade or business. Since these proceedings were submitted to the Court for decision the Revenue Act of 1942 has become law. Section 121 of that Act provides in part as follows: SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS. (a) Deduction for Expenses. - Section 23 (a) (relating to deduction for expenses) is amended to read as follows: (a) Expenses. - (1) * * * (2) Non-Trade *19 or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation. or maintenance of property held for the production of income. * * * * *
(e) Retroactive Amendment to Prior Revenue Acts. - For the purposes of the Revenue Act of 1938 or any prior revenue Act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue Act on the date of its enactment. In the light of these provisions of the Revenue Act of 1942 we hold that the amount of $1,917.65 paid as custodian fees is deductible from the gross income of Charlotte P. Milmine for 1937. Decisions will be entered for the respondent in Docket Nos. 103648, 103649, 103650, 103652 and 103653, and Under Rule 50 in Docket No. 103651.